## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| YVONNE OLSON | ) | Case No. 04-01210-TLM |
| | ) | |
| Debtor. | ) | MEMORANDUM OF DECISION |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### I.    BACKGROUND AND FACTS

Yvonne Olson ("Debtor") was involved in an automobile collision on March 23, 2004.  Debtor filed her chapter 7 bankruptcy petition 14 days later, on April 6, 2004.  Debtor listed her cause of action as an asset of "unknown" value on her schedule B, and claimed the same as exempt to "100% of the recovery" on her schedule C.  Doc. No. 1.[1]

Lois Murphy ("Trustee") employed Debtor's attorney, Stephen French ("Counsel") as special counsel.[2]  Counsel was employed to pursue the cause of

---

[1]  The exemption was asserted under Idaho Code § 11-605(10).  That section's "wild card" exemption for personal property was manifestly unavailable.  *See, e.g.*, *In re Smith*, 04.1 I.B.C.R. 14 n.4 (Bankr. D. Idaho 2004) (noting that, following amendment in 2000, this $800.00 exemption is limited to tangible personal property).  On May 10, 2004, Trustee objected to Debtor's "amended" exemption under Idaho Code § 11-604(1)(c), *see* Doc. No. 4, even though the Court record shows no such amendment of schedule C was ever filed.  The following day, Trustee and Debtor stipulated to keep the exemption issue open until such time as the claim was reduced to a sum certain through litigation or settlement.  *See* Doc. No. 5.

[2]  Under § 327(e), the Court may approve a trustee's employment of an attorney as special counsel even if that attorney has connections with the debtor that would render him not disinterested and thus ineligible to be employed under § 327(a) as the trustee's general counsel. *See In re Elias*, 05.2 I.B.C.R. 41, 43 (Bankr. D. Idaho 2005).  Counsel was so employed with § 327(e) approval here, with compensation on a contingency fee basis.  *See* Doc. No. 11. However, even § 327(e) prohibits representation of adverse interests.  So, Counsel and Trustee

MEMORANDUM OF DECISION - 1

action which was, of course, property of the estate.[3]   A settlement was thereafter reached regarding Debtor's personal injury claim resulting from the automobile collision.  A "Motion of the Trustee and the Debtor, Yvonne Olson, for Order Authorizing and Approving Compromise and Settlement of Personal Injury Claim and Approving Payment of Attorneys Fees and Costs" was filed on May 2, 2006.  *See* Doc. No. 16 ("Motion").[4] According to the Motion, Trustee has agreed to settle the personal injury claim resulting from the automobile collision for a gross amount of $34,079.81.  Trustee proposes a distribution of the settlement proceeds as follows:

| | |
|---|---|
| Settlement Amount: | $34,079.81 |
| Less Special Counsel's fees: | $11,359.94 |
| Less Special Counsel's costs: | $    123.08 |
| Subtotal: | $22,596.79 |
| Less Farmers Insurance subrogation: | $11,918.20 |

---

acknowledged that, once the personal injury claim was resolved and a sum made available, Trustee would need to hire separate, independent counsel to resolve any contest with Debtor over the claim of exemption.  *Id.*

   [3]  *See* § 541(a)(1); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986); *Lopez v. Specialty Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 28 (9th Cir. BAP 2002); *Farmers Ins. Group v. Krommenhoek (In re Hiatt)*, 00.3 I.B.C.R. 131, 132 (Bankr. D. Idaho 2000); *In re Overman*, 86 I.B.C.R. 19 (Bankr. D. Idaho 1986).

   [4]  As the Motion indicates, Trustee and Debtor *jointly* reached the settlement with the other driver and Farmers Insurance.  In this Decision, for simplicity, the Court will refer to the Motion as the Trustee's and evaluate whether Trustee has sustained her burden of showing good cause for approval of the compromise and the related distributions.

MEMORANDUM OF DECISION - 2

| | |
|---|---|
| Subtotal: | $10,678.59 |

Less outstanding post-petition medical bills

| | |
|---|---|
| Dr. Thiry: | $   692.00 |
| St. Luke's/Elks Rehab: | $1,190.20 |
| Balance: | $8,796.39 |

*See* Doc. No. 16 at 2.  Debtor and Trustee would thereafter settle or litigate the allowance of any exemption claim on the $8,796.39 balance.  *Id.*

No objections were raised to the Motion, which was properly noticed under Fed. R. Bankr. P. 2002(a)(3).  *See also* Fed. R. Bankr. P. 9019(a).  The Court at hearing raised no issues with the idea that the personal injury claim should be settled for a gross amount of $34,079.81.

However, as noted, Trustee's Motion also seeks the Court's approval of the payment from the settlement funds of fees and costs to Counsel, a "subrogation" claim of Farmers Insurance, and two post-petition medical bills.  These individuals and entities, the Motion suggests, should receive funds "off the top" before a net balance of the § 541(a)(1) estate asset is determined against which administrative expenses (other than Counsel's), the claims of all the estate's creditors, and Debtor's asserted exemption will be asserted.

At hearing, the Court asked about the factual basis, rationale and legal authority for the suggested distributions to Farmers Insurance and the post-petition creditors.  Though professing to have anticipated this question, neither Counsel nor

MEMORANDUM OF DECISION - 3

Trustee had any answer.  The Court invited post-hearing briefing.  In the resulting submission, Doc. No. 22, Trustee (through Counsel) suggests the subrogation is proper, and argues the Court should impose a "constructive trust" on the settlement funds for the benefit of the post-petition creditors.[5]

## II.    DISCUSSION AND DISPOSITION

Compromises are lifeblood to bankruptcy cases.  Trustees, in particular, regularly use them to streamline estate administration.  Despite trustees' regular use and familiarity, a number of problems can still arise, as they have in this case.

### A.    Compromise motions generally

The general situation is common enough.  A prepetition personal injury cause of action in favor of the debtor exists.  It is property of the bankruptcy estate, and only the trustee has standing to pursue it.  *See* cases cited *supra* note 3.  Often, as here, a trustee will elect to employ for the estate under § 327(e) the attorney who was representing the debtor prebankruptcy on the claim, and often on the same contingency fee basis.[6]

---

[5] Counsel's brief actually says "[i]t is *Debtor's* believe [*sic*, belief] that these two bills should be paid from the proceeds of the insurance settlement proceeds [*sic*]."  Doc. No. 22 at 2 (emphasis added).  Further, Counsel states "The *Debtor* requests the Court impose a constructive trust as to the funds necessary for payment of Thiry and St. Lukes Elks Rehab outstanding medical bills[.]"  *Id.*  These are more than just slips of the tongue.  As discussed later in this decision, Debtor's interests and Trustee's interests are *not* the same in regard to payment of the post-petition claims, and Counsel clearly appears to represent Debtor in these regards.  That Trustee has allowed the filing of the brief and the urging of these distributions on "her" behalf and has not made clear her position on the issue as fiduciary to estate creditors, by bringing in separate counsel or otherwise, is unfortunate.

[6] Employment on a contingency fee basis is acceptable.  *See* § 328(a).  However, the Idaho Rules of Professional Conduct (IRPC) require that such fee agreements be in writing and

It is the trustee's call, with the advice of her employed counsel, whether to litigate or settle.  Settlement, however, requires Court approval on notice to all creditors and parties in interest.  Fed. R. Bankr. P. 2002(a)(3), 9019(a); *In re Espinoza*, 03.3 I.B.C.R. 185, 189 (Bankr. D. Idaho 2003) (citing *In re Marples*, 266 B.R. 202, 206, 01.3 I.B.C.R. 116, 118 (Bankr. D. Idaho 2001)).  The debtor may also have a say in the matter of settlement if, as here, there is an exemption asserted in the cause of action.[7]

It would be simple enough, of course, to pursue Court approval of a "gross" settlement.  Here, that would be a settlement of all claims against the other driver and the insurance company for payment of $34,079.81.  The standards for approving a settlement on a trustee's request are well established.  *See, e.g., Espinoza*, 03.3 I.B.C.R. at 189; *Marples*, 266 B.R. at 206, 01.3 I.B.C.R. at 118. *See generally Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381-83 (9th Cir. 1986).

Under these authorities, Trustee is obligated to show – because she is

---

signed by client and counsel.  *See* IRPC 1.5(c).  Inasmuch as the debtor's attorney now represents the *estate's* interests, a written agreement must be made between the trustee and counsel, or at a minimum, a written agreement between them must be made specifically adopting the prebankruptcy written agreement signed by Debtor and Counsel.  All of this, of course, must be adequately disclosed and established under the § 327(e) and Fed. R. Bankr. P. 2014 pleadings seeking Court approval of the trustee's employment of the attorney.

[7]  There is an argument that a debtor lacks standing to voice objections to a trustee's proposed settlement if the debtor lacks a pecuniary interest in the distribution of the assets of the estate.  *See, e.g., Kieffer v. Riske (In re Kieffer-Mickes, Inc.)*, 226 B.R. 204, 208-09 (8th Cir. BAP 1998).  However, a claim of exemption in the cause of action, or the existence of a solvent estate which results in distribution of surplus to a debtor, *see* § 726(a)(6), satisfies the pecuniary interest requirement.

MEMORANDUM OF DECISION - 5

representative of and fiduciary to all the creditors of the estate – the proposed compromise is "fair and equitable" and supported by an adequate factual foundation. *A & C Properties*, 784 F.2d at 1381-83.[8]

Here, though the showing regarding the required *A & C Properties* factors is minimal, the Court might be inclined to approve a gross settlement in the indicated amount.[9]

### B.     Compensation aspects

Once a gross settlement is approved and the funds are received, a trustee may thereafter seek Court approval of distributions from those funds. That might occur through a final accounting, or distribution might precede final accounting if an appropriate motion is advanced and granted.

A typical distribution would be compensation for Court-approved general or special counsel. *See*, *e.g.*, §§ 328, 330, 331. Such an application requires, *inter*

---

[8] At times, trustees' Rule 9019 motions seem to do little more than recite the trustees' belief that the proposed settlement is fair and offer a general statement that the several *A & C Properties* factors are met. Trustees must do more than parrot the standards or announce that they are satisfied. Their burden is to "persuad[e] the bankruptcy court that the compromise is fair and equitable and should be approved." *A & C Properties*, 784 F.2d at 1381. Thus, they must present a cogent and detailed factual explanation, discussing how the factors apply to the specific litigation and proposed settlement. *Id.* at 1383 (requiring a "sufficient factual foundation" that a compromise or settlement is fair and equitable). To tolerate less would make the Court into a rubber stamp, allowing the trustee's evaluation to be determinative. The cases, of course, call upon the Court to make the ultimate judgment. *Id. at 1381*; *see also Marples*, 266 B.R. at 206, 01.3 I.B.C.R. at 118.

[9] The Court cannot be certain that this is an available alternative. It appears the settlement with the insurer requires inclusion of, at a minimum, the subrogation provisions. Parsing the Motion and approving only the "gross" settlement does not appear possible. As discussed further below, there are also other reasons the Motion must be denied.

MEMORANDUM OF DECISION - 6

*alia*, notice to all creditors.  *See* Fed. R. Bankr. P. 2002(a)(6).

In this District, where special counsel has been employed and is to be compensated on a contingency fee basis, a trustee's motion seeking to obtain approval of the settlement almost invariably also includes a request for payment of special counsel's fees and costs.  It is important, of course, if the parties elect this course rather than filing a separate compensation application, that all requisite showings for such relief be made in the now "combined" motion seeking approval of the compromise and the fee allowance.

In this case, while the pleadings and notice could be clearer, the Court would find the submissions marginally adequate to support allowance of Counsel's fees and costs.  Creditors were made aware of how much compensation was sought, and the Court can determine that the calculations are consistent with the application and order under which Trustee's § 327(e) employment of Counsel was approved.[10]

### C.    Other distributions

At times, a trustee will also seek through a compromise motion the Court's approval of other distributions from the settlement proceeds.  It often appears the

---

[10]  The Court, however, raises concerns *infra* with Counsel's advancing a request – as Trustee's special counsel – to pay post-petition creditors from the settlement funds, noting that representation of an adverse interest appears to exist.  Resolution of these issues would necessarily have to precede any allowance of compensation, since a disqualifying adversity impacts the propriety of allowing compensation.  *See* § 328(c) (allowing the court to deny compensation if, at any time during employment, a professional person such as special counsel represents or holds an adverse interest); *see also In re Molten Metal Tech., Inc.*, 289 B.R. 505, 511 (Bankr. D. Mass. 2003).

MEMORANDUM OF DECISION - 7

driving consideration for such a request is efficiency and economy, because the trustee hopes to save the time and expense of separate motion(s) and additional notice(s) to creditors.  Once again, however, and as with the "combined" compromise/compensation motion just discussed, it is critical the motion and supporting papers clearly explain the factual and legal basis for any and all proposed distributions from a settlement fund.

Two forms of such "supplemental" distributive provisions are common.

### 1.    Subrogation

The first is a claim of an insurer for subrogation to the extent that insurer has paid medical expenses that are being compensated for under the settlement. *See Hiatt*, 00.3 I.B.C.R. at 131.  Assuming the right of subrogation exists under applicable non-bankruptcy law, and assuming a solid factual foundation for its application (including that the trustee is in possession of and has reviewed and evaluated documentation regarding (i) the source and extent of the insurer's subrogation rights and (ii) the claims paid by the insurer that form the basis of the subrogation contention), this sort of distributive provision is not objectionable and can be approved.

Unfortunately, trustees sometimes fail to adequately explain in their submissions the legal or factual basis for recognizing an alleged subrogation right, and are unable to cogently address the question at hearing.  A trustee must have a good and credible reason for accepting an insurer's assertion of a subrogation

MEMORANDUM OF DECISION - 8

right.  For example, when this Court considered the issue of subrogation in *Hiatt*, the record included an insurance policy that contained specific provisions addressing the insurer's right(s) to the insured's recovery and establishing that, if the insured received payment, it would be held in trust for the insurer.  00.3 I.B.C.R. at 131.  These provisions were found sufficient to support the insurer's claims to subrogation and to establish that the funds held by the debtor were held in trust subject to § 541(d).  *Id.* at 132-33.  The detail involved in this judicial analysis should strongly caution trustees against merely taking for granted that a "right of subrogation" exists.

In the instant case, the "supplement" to the Motion (captioned as a "Report and Recommendation of Special Litigation Counsel") specifies the creditors and claim amounts paid by Farmers Insurance.  *See* Motion at Attach. 1, 6-7.  Missing, however, is any identified factual basis or legal analysis by which Trustee reaches her conclusion that a subrogation interest properly lies.

The Court will not just assume subrogation rights exist, and a trustee should not make such assumptions either.  A competent compromise motion will provide sufficient detail regarding any asserted claim to subrogation so that the propriety of the requested relief is apparent.

Though some factual information is contained in Counsel's report and recommendation, the Motion fails to meet this standard.  There is no indication of what the contractual or other bases are under which the right to subrogation is

MEMORANDUM OF DECISION - 9

asserted, or that the same have been considered, evaluated or confirmed.[11]  Also oddly absent is the "release and indemnity" agreement Trustee specifically requests in the Motion that she be authorized by the Court to sign.  The Court certainly cannot evaluate that request without knowing what the Trustee purports to bind herself or the estate to.

The Court sees no reason to tolerate these several defects.[12]  The subrogation provisions of the Motion cannot be approved on this record.  And, as noted at note 9 above, the subrogation payment appears to be a required component of the overall settlement.  Thus, the Motion as a whole must be denied.

**2.      Payments to alleged lienors, secured creditors or others**

The second area generally encountered in compromise motions that also seek validation of immediate distributions, involves liens, security interests or other claims against the proceeds of the cause of action.  Trustees often seek distributive authority *via* the compromise motion rather than filing a separate request for relief or waiting to address the subject claim in the final accounting. The Court has strongly cautioned trustees that, if any such distributions "off the top" are contemplated, the compromise motion must clearly explain why, the

---

[11]  The Court finds it hard to be sanguine about this and simply assume Trustee has been provided and has reviewed the necessary information and contractual documentation.  At hearing, Trustee seemed unable to address any of the factual aspects of the Motion or the suggested distributions.

[12]  This Trustee and others have previously been warned of deficiencies in their attempts to compromise personal injury and other causes of action and to make immediate distributions from the proceeds.

MEMORANDUM OF DECISION - 10

trustee must have adequate proof of the distributee's entitlement, and a sufficient record must be laid with that proof.[13]

### a.    The request here

Trustee asks that she be allowed to pay, in full and before the balance of the funds are reserved for debate between the estate and Debtor as to the extent of exemption, two *post-petition* medical creditors.[14]  Trustee does not assert that these creditors are the holders of statutory medical or other liens, or that they are secured parties.  Nor does she contend they are creditors paid by Farmers Insurance to which subrogation rights allegedly lie.[15]

Instead, Trustee argues (though only in the briefing submitted after hearing) these two creditors have claims "similar to" those of other medical creditors, and that they should benefit from a "constructive trust" on the settlement funds.  *See* Doc. No. 22 at 2-7.

### b.    Trustee's interests vs. Debtor's interests

Trustee's concern, statutorily, is with the distribution of property of the

---

[13]  On occasion, a Rule 9019(a) motion will also seek approval of a "compromise" (*i.e.*, a negotiated partial recognition and payment) of an alleged lien or security interest.  If so, the requirements of *Marples* and *A & C Properties* must be satisfied as to the "deal" struck between that creditor and the estate.

[14]  Trustee's brief indicates the obligations to these entities arose "more than a year following the filing of the debtor[']s petition."  *See* Doc. No. 22 at 7.

[15]  Doc. No. 22 indicates there were no "medical creditors" in existence prior to filing given the short time between the accident and the petition.  It appears that many of the post-petition medical creditors were paid by Farmers Insurance, forming the basis of the subrogation claim.  These two creditors for some reason were not similarly paid.

MEMORANDUM OF DECISION - 11

estate and proceeds of property of the estate to prepetition creditors.  *See*, *e.g.*,
§ 704, § 726(a)(1)-(a)(5).[16]  Here, Trustee proposes a distribution to two *post*-
petition creditors.

Debtor's obligations to St. Luke's/Elks Rehab and Dr. Thiry are not subject
to discharge.  *See* § 524(a), § 727(b); *In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir.
2005) (emphasizing that only pre-bankruptcy debts are discharged).  Trustee's
brief implicitly acknowledges this when noting that these two creditors will not be
able to file proofs of claim and participate in the bankruptcy.  Doc. No. 22 at 7.
That *Trustee* has any motivation or need to pay these creditors is not at all clear.
*Debtor*, however, does have an interest in paying them.  Her other creditors are
bound by the discharge entered on July 19, 2004.  *See* Doc. No. 10.  These post-
petition creditors are not.

The Motion and the brief in support were filed by *Trustee's* special counsel.
But it clearly appears that Counsel is advancing the interests of *Debtor*, his other
client, and not those of Trustee, in connection with the suggested distribution to
Dr. Thiry and St. Luke's/Elks Rehab.  Under § 327(e), Counsel's ability to act as
special counsel is predicated on his "not represent[ing] . . . any interest adverse to
. . . the estate with respect to the matter on which such attorney is to be employed."
The standard is a continuing one, and a later conflict of interest becomes as much a

---

[16] *See also* § 101(10)(A) which defines a "creditor" as an entity that has a claim, per
§ 101(5), against the debtor "that arose at the time of or before the order for relief."

MEMORANDUM OF DECISION - 12

problem as one existing at the time approval of employment is sought. *See*

§ 327(e), § 328(c).  Here, Trustee and Counsel took special pains to note that the

reserved exemption claim of Debtor would require Trustee to use separate counsel.

It now appears obvious that the question of paying these two post-petition debts

creates a similar adverse interest.

      The Court cannot approve this proposed distributive component of the

Motion given the dual and adverse role played by Counsel.  And the conflicting

interests of Trustee and Debtor leave the Court unable to conclude that *Trustee* has

a good and cogent argument why these two entities should be so preferred and

benefitted to the detriment of creditors of the estate.

### c.    Other problems with a constructive trust argument

      If the Court were to address the merits of the post-Motion and post-hearing

constructive trust argument urged by Counsel, Trustee would fare no better.

Certain principles apply to the trust argument, few of which are identified or

discussed in the brief.

      Property held in trust by a debtor for another, whether express or

constructive, is excluded from property of the estate under § 541(d) of the Code.

*See Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer
Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994).  However, before a bankruptcy court will

give effect to a constructive trust, it must first be recognized by applicable state

law.  *Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575

MEMORANDUM OF DECISION - 13

(9th Cir. 1985).  Furthermore, that state law must be applied in a manner consistent with federal bankruptcy law.  *Id*.

The imposition of a constructive trust is an equitable remedy used  to prevent injustice.  *Custer v. Dobbs (In re Dobbs)*, 115 B.R. 258, 269, 90 I.B.C.R. 179, 194 (Bankr. D. Idaho 1990) *(citing Davenport v. Burke*, 167 P. 481 (Idaho 1917)).  Whether such a remedy is appropriate in any given case is a matter of state law.  *Dobbs*, 115 B.R. at 269, 90 I.B.C.R. at 194.  More specifically, a constructive trust is an appropriate remedy where it would be "unconscionable for the holder of legal title to retain the benefits of the property."  *Id.*  In Idaho, "a constructive trust arises where legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in property."  *Hettinga v. Sybrandy*, 886 P.2d 772, 775 (Idaho 1994) (quoting *Witt v. Jones*, 722 P.2d 474, 477 (Idaho 1986)).

Counsel has failed to establish that, purely as a matter of state law, entities such as Dr. Thiry and St. Luke's/Elks Rehab would be successful in establishing a constructive trust on the funds received by Debtor.[17]

---

[17]  It is noteworthy that Dr. Thiry and St. Luke's/Elks Rehab are not the proponents of the constructive trust argument.  Neither has made any constructive trust claim before this Court or, as best as this record reflects, before any state court.  The argument is urged only by Debtor's (and Trustee's) Counsel.  In fact, it is not even clear these two entities are aware of the proposed settlement, the terms of the Motion, or the constructive trust argument.  The certificate of service

MEMORANDUM OF DECISION - 14

Next, even where state law would recognize the right of the creditor to a constructive trust, state law must still be applied consistently with federal bankruptcy policies. *N. Am. Coin & Currency, Ltd.*, 767 F.2d at 1575. Bankruptcy courts are generally cautious when "fashioning remedies based solely on 'fairness' and without regard to the requirements and goals of the [bankruptcy] Code." *Fitzgerald v. Hannah (In re Hannah Racing Prods., Inc.)*, 90 I.B.C.R. 222, 225 (Bankr. D. Idaho 1990).[18]

Whether or not a constructive trust is consistent with federal bankruptcy policy requires a balancing between the interests of the legal and equitable holders of the trust and the interests of the general creditors of the bankruptcy estate. *In re Dobbs*, 115 B.R. at 270, 90 I.B.C.R. at 194-95. Equal distribution among all creditors is a central policy of the Bankruptcy Code, as noted quite recently in *Delivery Serv. Inc. v. Zurich Am. Ins. Co.*, 126 S. Ct. 2105, 2109 (2006). *See also Beiger v. I.R.S.,* 496 U.S. 53, 58 (1990); *N. Am. Coin & Currency*, 767 F.2d at 1575. Deference to this policy suggests great caution when considering non-

---

on the Motion and notice of hearing, Doc. No. 19, does not show they were served. *Id.* at Attach. 1. Nor was the post-hearing brief shown to have been served on them. *See* Doc. No. 22.

    [18] *Hiatt* also cautioned strongly against an overly generous reliance on constructive trusts in bankruptcy cases. 00.3 I.B.C.R. at 133 n.9. It noted the Ninth Circuit "generally takes a dim view" of such claims. *Id.* (citing *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172 B.R. 638, 641-42 (9th Cir. BAP 1994)). Among other things, *Hiatt* emphasized "the analysis depends not upon the imposition of the equitable remedy of constructive trust but instead upon the determination of the extent of the debtor's interests (including lack of equitable interest) at the time of filing." 00.3 I.B.C.R. at 133 n.9.

MEMORANDUM OF DECISION - 15

ratable distributions under the rubric of constructive trusts.

Finally, and critically, *Hiatt* clearly articulates the view that, in those limited situations where recognition of a constructive trust is (a) appropriate under state law and (b) not at odds with bankruptcy policy, the Court must find that *at the time of filing the case* the debtor's interests in the trust *res* were legal only and an equitable interest was lacking.  00.3 I.B.C.R. at 133-34.  This petition-date analysis is driven by the very structure of the Code.  *See* § 541(d) ("Property in which the debtor holds, *as of the commencement of the case*, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold .")  Thus a bankruptcy court's recognition of a constructive trust requires that, even though the trust is inchoate and not yet implemented by a court ruling, the claim to the constructive trust has ripened as of the date of filing, and the putative beneficiary of such a trust is the equitable owner of the *res*, not the debtor.

In addressing these several propositions, it becomes clear that Trustee has not carried her burden and that the Motion would be denied.  Trustee has not shown that Idaho law would provide for a constructive trust under the present circumstances.  She has not shown that the two subject creditors, Dr. Thiry and St. Luke's/Elks Rehab, have any special equitable claim to the settlement funds.  Denying them a constructive trust interest does not appear to trigger an

MEMORANDUM OF DECISION - 16

unconscionable result because, while pre-petition creditors may only recover from the bankruptcy estate, these two post-petition creditors are not barred by the discharge from collecting from Debtor. Conversely, allowing Dr. Thiry and St. Luke's/Elks Rehab to recover from settlement proceeds would be inconsistent with the Code's guiding policy of ratable distribution. Any amounts paid to them from the settlement funds that are property of the estate would directly reduce the pro rata distributions to general creditors of the bankruptcy estate. And, finally, Trustee has not explained how, in light of § 541(d) and *Hiatt*, Debtor had a bare legal interest and these post-petition creditors an equitable interest in the suggested *res* of the constructive trust at the time Debtor filed her petition.

### III.   CONCLUSION

The Motion might be granted insofar as approving a "gross" settlement of $34,079.81, assuming the subrogation provisions are not a material component of the compromise agreement. The Court, however, has no basis to make that assumption. So, because the subrogation rights cannot be validated on the present record, the Motion must be denied.

Additionally, on the present record, the Motion's proposed distributions to post-petition creditors cannot be approved. And further, the requested allowance and payment of compensation to Counsel cannot be approved until and unless the adversity of interest in representation is resolved.

The Motion will therefore be denied. The Court will enter an Order

MEMORANDUM OF DECISION - 17

consistent with this decision.

DATED:  July 24, 2006

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18